IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 10-cv-02242-WYD-KLM

MICHAEL JASON MARTINEZ;
ELIZABETH FRITZ;
THOMAS TRUJILLO;
AMBER HUGENOT;
GARY HARRISON;
ROBERT RUMPF; and
DAMIAN GRADELESS on behalf of themselves and all others similarly situated,

    Plaintiffs,

v.

TERRY MAKETA, in his official capacity as El Paso County Sheriff,

    Defendant.

---

## PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

---

Mark Silverstein, Legal Director
Rebecca T. Wallace, Staff Attorney
AMERICAN CIVIL LIBERTIES UNION FOUNDATION OF
COLORADO
400 Corona Street
Denver, Colorado 80218
Telephone: (303) 777-5482
Fax: (303) 777-1773
Email: msilver2@att.net
       rtwallace@aclu-co.org

David C. Fathi, Director
NATIONAL PRISON PROJECT OF THE ACLU
FOUNDATION, INC.
915 15th Street NW, 7th Floor
Washington, D.C. 20005
(202) 548-6603
Email: dfathi@npp-aclu.org

Counsel for Plaintiffs

**Rule 7.1 Certificate**

Pursuant to D.C.Colo.L.Civ.R. 7.1, Mark Silverstein, counsel for Plaintiffs, conferred with Charles Greenlee, counsel for defendant, who opposes this motion.

**INTRODUCTION**

This lawsuit challenges the El Paso County Jail's recently implemented postcard-only policy, which forbids prisoners to write letters to their parents, children, spouses, domestic partners, fiancées, sweethearts, or friends; to clergy, reporters, or spiritual advisors; or to anyone else in the free world whose correspondence does not fall within the Jail's narrow exceptions. Instead, they must write all such correspondence on 4 x 6 inch postcards supplied by the Jail. Plaintiffs allege that this policy – which until 2010 was *not followed by a single jail in Colorado* – violates their rights under the Colorado and United States Constitutions, and they seek a preliminary injunction against its continued enforcement. For all the reasons set forth herein, the motion for preliminary injunction should be granted.[1]

**STATEMENT OF FACTS**

**I.   The Jail's Implementation of the Postcard-only Policy**

In late July, 2010, the El Paso County Jail instituted a new policy governing prisoners' outgoing correspondence. Pursuant to the new policy, "all outgoing personal letter writing materials will consist of 4 x 6 inch post cards. Envelopes and writing paper will no longer be issued to inmates. Inmates will no longer be able to purchase envelopes and writing paper from commissary for personal letter writing." Doc. No. 17, Proposed Scheduling Order, Statement of Undisputed Facts (hereinafter "Undisputed Facts"), Fact e. Under the new policy, prisoners who

---

[1] The original plaintiffs in this case are Jail prisoners whose ability to correspond with family members and others has been restricted by the postcard-only policy. They seek certification, pursuant to Fed. R. Civ. P. 23(b)(2), of a class comprising "all current and future prisoners in the El Paso County Jail who are subject to or affected by the Defendant's postcard-only policy." The motion for class certification is fully briefed. Contemporaneously with this motion, Callie Gonzales is filing a motion for leave to intervene as a party plaintiff. Ms. Gonzales' son is incarcerated in the Jail, and her ability to receive correspondence from him has been restricted by the policy at issue.

have funds can buy up to twenty identical postcards for 50 cents each.  *See* Undisputed Facts, Fact j*; see also* Exh. 1, Gradeless Decl. *¶* 6.  If the Jail classifies a prisoner as "indigent," the Jail provides two postcards every two weeks.   *See* Undisputed Facts, Fact k.  The Jail makes an exception to its postcard-only policy for "legal" mail.  Undisputed Facts, Fact g.

Prior to implementation of the postcard-only policy, indigent prisoners were provided the means to write three, multi-page personal letters per week, on paper and in an envelope, free of charge.  *See* Undisputed Facts, Fact m.  Prisoners with funds were permitted to send as many letters as they wished as long as they purchased the writing materials and stamps from the Jail's commissary.  *Id.*

The postcard-only policy has drastically limited prisoners' correspondence.  The postcards expose prisoners' correspondence to anyone who might handle the mail, and allow prisoners only a fraction of the writing space that was formerly available in a two or three-page, double-sided letter.   The new policy also prohibits prisoners from enclosing expressive or artistic drawings they have made, newspaper or magazine clippings, religious literature, or other writings they wish to share.  Undisputed Facts, Fact n.  Prisoners cannot use an envelope to write a letter-to-the-editor, to seek spiritual guidance from clergy, to provide information to investigative reporters, or to submit their own writings to such periodicals as the *Colorado Springs Independent* or *Prison Legal News*.  *Id.*

Prior to 2010, *every single jail* in Colorado permitted prisoners to send outgoing personal correspondence on paper and in an envelope.  Today the overwhelming majority of Colorado jails still allow such outgoing correspondence.[2]

---

[2] Plaintiffs believe that defendant does not dispute the facts set forth in this paragraph, but in any event, plaintiffs will present evidence to support these assertions at the hearing on this motion.

According to the Jail's estimates, the postcard-only policy will save the Jail approximately $119 per week in postage and envelopes for indigent prisoners. *See* Doc. No. 10, Defendant's Answer (hereinafter "Def. Ans."), Exh. A-1, Cost Chart (attached hereto as Exh. 2).

## II. The Effects of the Postcard-only Policy on Plaintiffs

Plaintiffs Damian Gradeless and Amber Hugenot have been incarcerated at the Jail since before the imposition of the postcard-only policy. Proposed Plaintiff-Intervenor Callie Gonzales is the mother of Mr. Gradeless. All have found their communications dramatically stifled by the postcard-only policy.

Prior to the postcard-only policy, Mr. Gradeless was a prolific writer, who struggled mightily to maintain close relationships with his family and fiancée through the written word and through his own drawings. Exh. 1, Gradeless Decl.*, passim.* Although Mr. Gradeless sends the maximum number of postcards permitted by the Jail each week, the postcard-only policy has made it impossible for him to maintain the regular, in-depth, private communications with his loved ones that he relied on to help him cope with the pressures, fears and loneliness of incarceration. Exh. 1, Gradeless Decl.*, passim.* Mr. Gradeless explains:

> I feel the postcard-only policy serves to isolate me from my family and friends at a time when I am most in need of their support, and when they are most in need of communication from me. I fear that my time incarcerated will serve to weaken my family and community ties, making it more difficult for me to reintegrate successfully when I am released.

Exh. 1, Gradeless Decl. ¶ 11.

One of the primary recipients of Mr. Gradeless' communications, his mother Callie Gonzales, has also been dramatically affected by the postcard-only policy. As the eldest son of seven children, Mr. Gradeless has acted as the male head of household since the death of Ms. Gonzales' husband last year. Exh. 3, Gonzales Decl. ¶ 2. As part of that role, Mr. Gradeless

was a primary support system for Ms. Gonzales, regularly providing her with advice and support regarding her children's development and discipline. *Id.* ¶¶ 2-3. Even while incarcerated, Mr. Gradeless made every effort to continue providing Ms. Gonzales with this support through his lengthy, frequent letters. Exh. 1, Gradeless Decl. ¶¶ 5, 8*;* Exh. 3, Gonzales Decl. ¶¶ 3-4. After the imposition of the postcard-only policy, Mr. Gradeless was no longer able to do so, both because of the extremely limited writing space available to him on the postcards, and because of the inherently public nature of postcard communications. Exh. 1, Gradeless Decl. ¶¶ 6, 8; Exh. 3, Gonzales Decl. ¶¶ 6-7. As Mr. Gradeless knew, Ms. Gonzales' children often retrieve her mail and read Mr. Gradeless' postcards. Exh. 1, Gradeless Decl. ¶ 8; Exh. 3, Gonzales Decl. ¶ 7. Therefore, he could not discuss with his mother issues that were inappropriate for viewing by his younger siblings, including his precarious emotional state, the challenges of life in jail, and Ms. Gonzales' struggles with the behavior of some of her children. Exh. 1, Gradeless Decl. ¶ 8; Exh. 3, Gonzales Decl. ¶ 7. As Ms. Gonzales explains:

> It is impossible for Damian and I to remain as close as we were when he was able to send letters, because we cannot communicate in a detailed way about so many important issues. I feel more alone without regular support from my eldest son, someone who has truly helped me in my struggles as a recently single mom. I fear I am likewise not providing him the level of support that he needs from me right now, because I do not have the insight I once did into his experiences, his hopes, and his fears.

Exh. 3, Gonzales Decl. ¶ 8.

Plaintiff Amber Hugenot was pregnant when she was booked into the Jail. Exh. 4, Hugenot Decl. ¶ 2. The postcard-only policy made it significantly more difficult for her to arrange for the care of her baby once born and to cope with the emotional challenges of being unable to care for her baby due to her incarceration. *Id.* ¶¶ 2-3. Further, while incarcerated at the Jail, Ms. Hugenot has been struggling to maintain a connection with her other children, some

of whom are too young to read. *Id.* ¶ 5. Prior to the imposition of the postcard-only policy, Ms. Hugenot sent handmade drawings to her children, reflective of her thoughts, feelings, and love for them. *Id.* She can no longer send these drawings and she fears that, as a result, they will be less close to her upon her release. *Id.* ¶¶ 6, 7-9.

## ARGUMENT

To obtain interim injunctive relief, the moving party must generally demonstrate "(1) a likelihood of success on the merits; (2) a likelihood that the movant will suffer irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in the movant's favor; and (4) that the injunction is in the public interest." *RoDa Drilling Co. v. Siegal*, 552 F.3d 1203, 1208 (10th Cir. 2009). The plaintiffs here easily satisfy this test.[3]

### I. Plaintiffs are Substantially Likely to Succeed on the Merits of Their Constitutional Claims

"Correspondence between a prisoner and an outsider implicates the guarantee of freedom of speech under the First Amendment and a qualified liberty interest under the Fourteenth Amendment." *Treff v. Galetka*, 74 F.3d 191, 194 (10th Cir. 1996) (citing *Procunier v. Martinez*, 416 U.S. 396 (1974)). Unlike regulations on incoming mail, which are subject to the less stringent test set forth in *Turner v. Safley*, 482 U.S. 78 (1987) (regulation valid if it is reasonably related to legitimate penological interests), regulations that infringe upon First Amendment rights in prisoners' outgoing mail are subject to the stricter test set forth in *Martinez*. *Treff*, 74 F.3d at

---

[3] Three types of "disfavored" injunctions require a heightened standard: "(1) preliminary injunctions that alter the status quo, (2) mandatory preliminary injunctions, and (3) preliminary injunctions that give the movant all the relief it would be entitled to if it prevailed in a full trial." *Id*. at 1208 n.3. The proposed injunction does not fall into any of the three disfavored categories. By temporarily enjoining the new postcard-only rule, plaintiffs merely seek to return defendant's mail policy to the "last peaceable uncontested status existing between the parties before the dispute developed." *See Schrier v. University of Colorado*, 427 F.3d 1253, 1260 (10th Cir. 2005). Similarly, the proposed injunction is prohibitory rather than mandatory because enjoining the postcard-only policy "does not compel [the defendant] to do something it was not already doing during the last uncontested period preceding the injunction." *Dominion Video Satellite, Inc. v. Echostar Satellite Corp.*, 269 F.3d 1149, 1155 (10th Cir. 2001). Finally, the proposed injunction would not give plaintiffs all the relief they would be entitled to if they prevail in a full trial: it merely provides temporary, not permanent, protection for their First Amendment rights. *See Prairie Band of Potawatomi Indians v. Pierce*, 253 F.3d 1234, 1247-48 (10th Cir. 2001).

194-95; s*ee also Jordan v. Pugh*, 504 F.Supp.2d 1109, 1120 (D. Colo. 2007) (invalidating outgoing mail regulation under *Martinez* test). The reason for this distinction is that "outgoing personal correspondence from prisoners . . . [does] not, by its very nature, pose a serious threat to prison order and security." *Thornburgh v. Abbott*, 490 U.S. 401, 411 (1989).

Under the *Martinez* test, a valid limitation on a prisoner's outgoing mail must meet two requirements. First, the "limitations on a prisoner's First Amendment rights in his outgoing mail 'must further an important or substantial governmental interest unrelated to the suppression of expression.'" *Treff*, 74 F.3d at 195 (*quoting Martinez*, 416 U.S. at 413). More specifically, the limitation must further "one or more of the substantial governmental interests of security, order, and rehabilitation." *Martinez*, 416 U.S. at 413. Second, "the limitation of First Amendment freedoms must be no greater than is necessary or essential to the protection of the particular governmental interest involved." *Martinez*, 416 U.S. at 413; *Treff*, 74 F.3d at 195.[4]

### A. The Postcard-Only Policy Substantially Burdens the First Amendment Rights of Both Prisoners and Their Free-World Correspondents

It is undisputed that the postcard-only policy significantly limits the amount of written correspondence prisoners can send, and entirely prevents them from sending drawings, newspaper clippings, religious tracts, or other expressive materials. *See* Statement of Facts, *supra;* Exh. 1, Gradeless Decl., *passim*; Exh. 3, Gonzales Decl., *passim.* These restrictions infringe the First Amendment rights not only of prisoners, but also of their family members and other free-world correspondents:

> Communication by letter is not accomplished by the act of writing words on paper. Rather, it is effected only when the letter is read by the addressee. Both parties to the correspondence have an interest in securing that result, and censorship of the

---

[4] Article II, section 10 of the Colorado Constitution provides broader protection of speech than the First Amendment. *See Bock v. Westminster Mall Company*, 819 P.2d 55, 59-60 (Colo. 1991). Thus, while this brief discusses only plaintiffs' claims under the First Amendment, a policy that violates the First Amendment *a fortiori* violates Art. II, sec. 10.

> communication between them necessarily impinges on the interest of each. . . . The wife of a prison inmate who is not permitted to read all that her husband wanted to say to her has suffered an abridgment of her interest in communicating with him as plain as that which results from censorship of her letter to him. In either event, censorship of prisoner mail works a consequential restriction on the First and Fourteenth Amendments rights of those who are not prisoners.

*Martinez*, 416 U.S. at 408-09.

### B. The Postcard-Only Policy is Neither Necessary Nor Essential to Satisfy Any Important or Substantial Penological Interest

In this case, Defendant identifies only two interests that purportedly justify the postcard-only policy: first, that it will stop prisoners from using outgoing mail to commit crimes; and second, that it will save money. Def. Ans. at 2. Neither interest justifies the policy.

#### 1. The Postcard-Only Policy is Neither Necessary Nor Essential to Satisfy the Jail's Interest in Preventing Crime

Plaintiffs agree that preventing prisoners from using outgoing mail to commit crimes is an important governmental interest. *See Martinez*, 416 U.S. at 413. However, restricting prisoners' outgoing mail to postcards is neither necessary nor essential to serve that interest.

As a threshold matter, it is important to note that until August 2010, the El Paso County Jail freely allowed prisoners to send personal mail in envelopes. Indeed, until 2010, *no jail in Colorado* limited prisoners' outgoing mail to postcards. These facts alone argue powerfully against a finding that a postcard-only policy is "necessary or essential" to protect the interest in security and crime prevention. *See Martinez*, 416 U.S. at 414 n. 14 ("While not necessarily controlling, the policies followed at other well-run institutions would be relevant to a determination of the need for a particular type of restriction").

At the hearing on this motion, plaintiffs expect to present an expert on jail management and security who will testify that a postcard-only policy for outgoing prisoner mail is not necessary or essential to protect jail security and prevent crime, and that numerous jails advance

these goals by other means that trench far less heavily on the First Amendment rights of prisoners and their free-world correspondents.  Even without the benefit of expert testimony, however, certain alternatives are obvious.

It is settled law that jail officials may inspect outgoing letters to determine whether they "fall[] into a category which poses a threat, including escape plans, plans related to ongoing criminal activity, and threats of blackmail or extortion."  *Beville v. Ednie*, 74 F.3d 210, 213-14 (10th Cir. 1996) (internal citations and quotations omitted).  They may also require that outgoing envelopes be left unsealed to facilitate this inspection.  *See Stow v. Grimaldi*, 993 F.2d 1002, 1004 (1st Cir. 1993).  Thus, defendant here can inspect all outgoing letters; outgoing letters sent by high-risk prisoners; outgoing letters prison officials believe may pose a security risk; or a random sample of outgoing letters.[5]  Defendant has not explained – let alone demonstrated with evidence – why these alternatives do not fully satisfy security needs.  *See Beerheide v. Suthers,* 286 F.3d 1179, 1189 (10th Cir. 2002) (even under the more deferential *Turner* test, "[i]n order to warrant deference, prison officials *must present credible evidence* to support their stated penological goals") (emphasis in original).[6]

### 2. The Jail's Interest in Saving Money Does Not Advance Security, Order, or Rehabilitation

The second justification identified by the Jail is that "[t]he postcards are … a significant cost savings to the Jail."  Def. Ans. at 2.  As a threshold matter, a mere desire to save money does not satisfy the *Martinez* test, which requires that the restriction on First Amendment rights "further[] one or more of the *substantial governmental interests of security, order, and*

---

[5] Defendant's Answer asserts that prior to adoption of the postcard-only policy in August 2010, "outgoing mail was only opened upon reasonable belief that the letters presented a public safety threat."  Def. Ans. at 2.

[6] There is reason to doubt that security concerns were the actual motivation for the postcard-only policy.  Defendant cites a single prisoner who allegedly used outgoing mail to commit crimes "from 2005 to 2006."  Def. Ans. at 2.  The postcard-only policy was not adopted until the latter half of 2010.  Even under the more deferential *Turner* standard, correctional officials cannot rely upon rationales that did not, in fact, motivate the challenged policy.  *See Quinn v. Nix*, 983 F.2d 115, 118 (8th Cir. 1993); *Swift v. Lewis*, 901 F.2d 730, 731-32 (9th Cir. 1990).

*rehabilitation*." 416 U.S. at 413 (emphasis added). A desire to save money is an interest shared by all government entities, and indeed by all actors, public and private; it is in no way unique to the correctional setting. *Martinez* sets forth an exhaustive list of governmental interests that can justify restrictions on outgoing mail, and saving money is not among them. *See Ramos v. Lamm*, 639 F.2d 559, 581 (10th Cir. 1980) (holding that defendants' "general argument that the trial court's order intrudes on prison administration" cannot justify mail restrictions under *Martinez*); *Battle v. Anderson*, 376 F. Supp. 402, 425 (E.D. Okla. 1974) (outgoing mail restrictions not justified when imposed "solely to serve the administrative convenience of the defendants, without furthering any demonstrated interest in the orderly operation of the institution or the rehabilitation of its inmates").

Moreover, even if cost savings were an available justification, defendant has provided no evidence to show that the postcard-only policy is "necessary or essential" to that interest. Again, the El Paso County Jail operated for years without a postcard-only policy, a fact that severely undercuts any argument that such a policy is "necessary or essential." Defendant attaches to his Answer a one-page document that "compares the cost of postage and supplies for mailing letters from the Jail to the projected cost of postage and supplies for mailing postcards." Def. Ans. at 2; *see* Exh. 2, Cost Chart. First, these alleged savings are projections only; the latest date on the document is April 13, 2010 – almost four months before the postcard-only policy went into effect. Second, even accepting these projections at face value, they amount to a savings of approximately $76 on postage and $43 on paper and envelopes each week in a jail with an average population of 1300. Such trivial savings cannot justify a restriction on First Amendment rights even under the more deferential *Turner* test, let alone the stricter *Martinez* standard. *See Beerheide,* 286 F.3d at 1192 (holding that because Department of Corrections failed to show that

providing free kosher meals to Jewish prisoners would have more than a *de minimis* cost in terms of finances, staffing, and administration, it failed to show that charging for kosher meals was justified under *Turner*).

Finally, the Jail's asserted savings apply only to *indigent* prisoners, to whom the Jail provides writing material and postage without charge. The Jail saves no money with regard to prisoners who buy their own writing material and postage from the Jail commissary. But the postcard-only policy applies to *all* prisoners, both indigent and non-indigent. Therefore, even if the cost rationale were legitimate under *Martinez* – and it is not – the policy nevertheless is fatally overbroad in its application to non-indigent prisoners. *See Martinez*, 416 U.S. at 413-14 (restriction on prisoner mail "that furthers an important or substantial interest of penal administration will nevertheless be invalid if its sweep is unnecessarily broad").

### C. Defendant's Secret and Unwritten Amendment to the Policy Does Not Cure its Deficiencies

On August 6, 2010, defendant introduced Form DB219, titled "**SINGLE PRIVILEGED LEGAL/NOTARIZED DOCUMENTS REQUEST FORM.**" Def. Ans., Exh. A-3, Aug. 6, 2010 Form DB219 (attached hereto as Exh. 5). This form does not allow prisoners to send letters, but only to use an envelope to send a "single privileged legal/notarized document," without any enclosures.[7] On August 12, 2010, defendant amended Form DB219 by adding a single sentence: "Inmates can petition for letters on a case by case basis, for special circumstances that are of legitimate legal or medical issues [sic]." Def. Ans., Exh. A-3, Aug. 12, 2010 Form DB219 (attached hereto as Exh. 6).[8]

---

[7] "This is **ONLY** for single privileged legal/notarized documents that need to go to a personal address. … **ONLY** the single privileged legal/notarized document will be mailed; **NO** other correspondence will be allowed." Exh. 5 (Aug. 6, 2010 Form DB 219).

[8] Except for this single sentence added to Form DB219, all of defendant's relevant written policies continue to assert that the *only* exception to the postcard-only rule is for legal mail. The inmate mail policy still states that envelopes and paper may be used only for "legal correspondence," not for personal correspondence. *See* Def. Ans., Exh. A-1, Directive 10.4

11

Then, shortly after Plaintiffs filed their class action complaint in this case, Defendant asserted the existence of a new and unwritten provision, kept secret from prisoners, that if a prisoner makes a written request for an exception to the postcard-only rule, that request "would be considered" and, if it "appeared to be of legitimate concern for privacy," would be granted. Doc. No. 13, Defendant's Response to Plaintiffs' Motion to Certify Class and Appoint Class Counsel (hereinafter "Def. Br."), Exh. A-2 (Presley Aff.) (attached hereto as Exh. 10). Defendant asserts that Form DB219 is intentionally worded to mislead prisoners, and that in fact a request to send a letter in other circumstances, if a prisoner somehow knows to submit such a request, will be considered. *See* Def. Br. at 2-3 ("Though the language of the form says that it is to be used 'for special circumstances that are of legitimate legal or medical issues,' any request for an exception will receive consideration"); Exh. 10 (Presley Aff.), ¶¶ 3, 4 (asserting that exceptions are not limited to "legal or medical issues," but jail officials "believed that having such a restriction would curb frivolous requests").

Obviously the postcard-only policy must stand or fall as it is written; defendant's belated assurance, after the filing of this suit, that it will informally read in additional exceptions is entitled to no weight in this Court's analysis. As the Supreme Court observed earlier this year:

> [T]he First Amendment protects against the Government; it does not leave us at the mercy of *noblesse oblige*. We would not uphold an unconstitutional statute merely because the Government promised to use it responsibly. . . . The Government's assurance that it will apply § 48 far more restrictively than its language provides is pertinent only as an implicit acknowledgment of the potential constitutional problems with a more natural reading.

*United States v. Stevens,* 130 S. Ct. 1577, 1591 (2010).

---

(attached hereto as Exh. 7). The Standard Operating Procedures (SOP) still state that "Single Privileged Legal documents may be mailed to family members or friends, only if it contains copies of inmate's legal papers or a Power of Attorney," and that "Legal mail does not include mail to or from doctors, psychiatrists, or clergy." *See* Def. Ans., Exh. A-2, SOP 05.04(IV)(E) (attached hereto as Exh. 8). And the Inmate Handbook still states: "'Legal mail' is not mail sent to family members or friends, even if it contains copies of your legal papers. Legal mail does not include mail to or from doctors, psychiatrists, Child Protective Services, [or] Outside Journey." *See* Def. Ans., Exh. A-4, Inmate Handbook, at 14 (attached hereto as Exh. 9).

In any event, even if defendant had a written policy of making case-by-case exceptions to the postcard-only rule based on what Jail officials believe to be a "legitimate concern for privacy," this policy would be a standardless exercise of unfettered discretion of the kind that has been repeatedly struck down on First Amendment grounds. In *Martinez* itself, the Supreme Court invalidated the outgoing prisoner mail regulations at issue there, finding that their vague nature "fairly invited prison officials and employees to apply their own personal prejudices and opinions as standards for mail censorship." 416 U.S. at 415. Similarly, in *Cofone v. Manson*, 409 F. Supp. 1033 (D. Conn. 1976), the court relied on *Martinez* to invalidate a mail rule that allowed rejection of publications that "obstruct rehabilitative objectives," holding that "the first amendment will not allow a catchall regulation which permits the exercise of unbridled discretion." *Id*. at 1041.

In the absence of any standards to guide their discretion, Jail employees could allow prisoners to use envelopes to write to opposite-sex partners but not same-sex partners; to write to Christian ministers but not to rabbis or imams. This is a result the First Amendment does not permit.

## II. Plaintiffs Will Suffer Irreparable Injury if the Preliminary Injunction is Denied

As a general rule, a "plaintiff suffers irreparable injury when the court would be unable to grant an effective monetary remedy after a full trial because such damages would be inadequate or difficult to ascertain." *Kikumura v. Hurley*, 242 F.3d 950, 963 (10th Cir. 2001). "When an alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary." *Howard v. United States*, 864 F. Supp. 1019, 1028 (D. Colo. 1994).

More specifically, "loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Pacific Frontier v. Pleasant Grove City,* 414 F.3d

13

1221, 1235 (10th Cir. 2005) ((quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)); s*ee also Heideman v. South Salt Lake City*, 348 F.3d 1182, 1190 (10th Cir. 2003) (holding that even a "minimal restriction" on the manner in which dancers may convey their artistic message constitutes irreparable injury). Accordingly, when government action threatens First Amendment rights, as in this case, there is a presumption of sufficient irreparable injury to warrant a preliminary injunction. *Cmty. Communications Co. v. City of Boulder*, 660 F.2d 1370, 1376 (10th Cir. 1981).

### III.     The Balance of Equities Tips Sharply in Plaintiffs' Favor

In this case, the balance of equities clearly favors the plaintiffs. The postcard-only policy heavily burdens the First Amendment rights of both prisoners and their free-world correspondents – a burden that constitutes irreparable injury as a matter of law. By contrast, the Defendant will suffer no significant harm if the policy is temporarily enjoined. The preliminary injunction would merely require the Jail to return to a mail policy under which it – and every other jail in Colorado – operated for many years, apparently without incident. Accordingly, the balance of equities tips sharply in plaintiffs' favor. *See American Civil Liberties Union v. Johnson*, 194 F.3d 1149, 1163 (10th Cir. 1999) ("the threatened injury to Plaintiffs' constitutionally protected speech outweighs whatever damage the preliminary injunction may cause Defendants' inability to enforce what appears to be an unconstitutional statute").

### IV.     The Injunction is in the Public Interest

"[A]s far as the public interest is concerned, it is axiomatic that the preservation of First Amendment rights serves everyone's best interest." *Local Org. Comm., Denver Chap., Million Man March v. Cook*, 922 F. Supp. 1494, 1501 (D. Colo. 1996); *accord Elam Constr. v. Reg. Transp. Dist.*, 129 F.3d 1343, 1347 (10th Cir. 1997) ("The public interest . . . favors plaintiffs' assertion of their First Amendment rights"); *Johnson*, 194 F.3d at 1163 ("the preliminary

injunction will not be adverse to the public interest as it will protect the free expression" of Internet users). The injunction plaintiffs seek would serve the public interest while leaving Jail officials fully capable of addressing legitimate security concerns, just as they were before the postcard-only policy was adopted.

## V.     No Security Should Be Required

Fed. R. Civ. P. 65(c) provides that a preliminary injunction may issue "only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongly enjoined or restrained." However, "trial courts have wide discretion under Rule 65(c) in determining whether to require security," *RoDa Drilling Co*., 552 F.3d at 1215 (internal quotations omitted), and may decline to require security in appropriate cases. *See, e.g., Winnebago Tribe of Neb. v. Stovall*, 341 F.3d 1202, 1206 (10th Cir. 2003) (no bond necessary where there was no showing of harm from injunction); *Moltan Co. v. Eagle-Picher Indus., Inc*., 55 F.3d 1171, 1176 (6th Cir. 1995) (finding no bond necessary where plaintiff had strong likelihood of success on merits).

This is a case in which plaintiffs have a strong likelihood of success on the merits, and defendant will suffer no harm from the injunction. Accordingly, no security should be required.

## CONCLUSION

For the foregoing reasons, the motion for preliminary injunction should be granted. The Court should enjoin the defendant from continuing to enforce the challenged postcard-only policy, or any other policy that limits outgoing mail to postcards, thus restoring the status quo that existed before this controversy began.

Respectfully submitted, November 10, 2010.

        s/Mark Silverstein_____
        Mark Silverstein
        Rebecca T. Wallace
        American Civil Liberties Union Foundation of Colorado
        400 Corona Street
        Denver, Colorado 80218
        Telephone:  (303) 777-5482
        Fax:  (303) 777-1773
        Email: msilver2@att.net

        s/David C. Fathi_____
        David C. Fathi
        Director
        National Prison Project of the ACLU Foundation, Inc.
        915 15th Street NW, 7th Floor
        Washington, D.C. 20005
        (202) 548-6603
        Email: dfathi@npp-aclu.org
        *Not admitted in DC; practice limited to federal courts*

        **Attorneys for Plaintiffs**

## **CERTIFICATE OF SERVICE**

I hereby certify that on November 10, 2010 I electronically filed the foregoing **PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION** with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following address:

    Amy R. Folsom - amyfolsom@elpasoco.com

    Charles C. Greenlee - charlesgreenlee@elpasoco.com

                **s/**Debra Woods_____